IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BAYER CROPSCIENCE LP and<br>MONSANTO TECHNOLOGY LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>TEDDY WILLIS,<br><br>    Defendant. | Case No. 5:21-cv-00070 |

## ORIGINAL COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Bayer CropScience LP and Monsanto Technology LLC (collectively referred to as "Bayer CropScience" or "Plaintiffs"), file this Original Complaint against Defendant Teddy Willis ("Willis" or "Defendant") and would respectfully show this Court the following:

### I.     INTRODUCTION

1. Defendant knowingly, intentionally, and willfully committed patent infringement by making, using, offering to sell, and/or selling cotton seed with Bayer CropScience's patented technology, including its Bollgard II® and/or XtendFlex™ cotton seed technology. This infringing cotton seed made, used, offered for sale, and/or sold by Defendant, without authorization from Bayer CropScience, was saved from harvesting such cotton seed planted in prior years. Defendant further induced and contributed to patent infringement by selling this infringing cotton seed to other

farmers—or delinting such cotton seed for other farmers for them to plant—without authorization from Bayer CropScience.

## II. PARTIES

### Plaintiffs

2. Bayer CropScience LP is a limited partnership organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.

3. Monsanto Technology LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in St. Louis, Missouri.

### The Defendant

4. Defendant Teddy Willis is an individual and a citizen of Texas. His current address, upon information and belief, is 7322 93rd Street, Lubbock, Texas 79424.

5. Willis owns and operates a delinting facility in Lubbock County with an address of 15003 FM 400 (County Road 3400), Slaton, Texas 79364.

6. Willis may be served with summons at 15003 FM 400 (County Road 3400), Slaton, Texas 79364, or 7322 93rd Street, Lubbock, Texas 79424, or wherever he may be found.

## III. JURISDICTION AND VENUE

7. This is an action for patent infringement arising under the patent laws of the United States of America, 35 U.S.C. § 1, *et. seq.*, including 35 U.S.C. § 271. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because one or more of

Bayer CropScience's claims arise under the laws of the United States, as well as 28 U.S.C. § 1338, granting district courts original jurisdiction over any civil action regarding patents.

8. This Court has personal jurisdiction over Defendant, and venue is proper in this judicial district. Willis resides in and operates his business in Lubbock County, a county within the Northern District of Texas. Venue also is proper in this judicial district because Plaintiffs' claims arose within this judicial district. Specifically, Defendant committed patent infringement at his regular and established place of business in Lubbock County, Texas. As such, venue is proper under 28 U.S.C. § 1400(b).

## IV.   PATENTS-IN-SUIT

9. United States Patent Number 7,223,907 ("the '907 patent"), a true and correct copy of which is attached hereto as **Exhibit A**, was issued on May 29, 2007.

10. United States Patent Number 7,381,861 ("the '861 patent"), a true and correct copy of which is attached hereto as **Exhibit B**. The '861 patent was issued on June 3, 2008.

11. United States Patent Number 8,420,888 ("the '888 patent"), a true and correct copy of which is attached hereto as **Exhibit C**. The '888 patent was issued on April 16, 2013.

12. Monsanto Technology LLC is and has been the owner of the '907, '861, and '888 patents for all times relevant to the events giving rise to this action.

13. Bayer CropScience is and has been the exclusive licensee of the '907, '861, and '888 patents from Monsanto Technology LLC.

## V.  FACTUAL BACKGROUND

**A. Background of Bayer CropScience's Biotechnologies**

14.    This case concerns revolutionary biotechnologies including Bollgard II® and XtendFlex™ cotton seed.  These patented technologies enable cotton (1) to resist leaf and boll-feeding worm species that damage cotton bolls and reduce yields, and (2) to tolerate widely-used agricultural herbicides such as glyphosate, dicamba and glufosinate.  Glyphosate, dicamba, and glufosinate-based herbicides can cause damage to conventional crops and non-crop plants that are not naturally resistant to the herbicides or have not been genetically modified to tolerate them.

15.    Bayer CropScience invested decades of research and hundreds of millions of dollars developing these biotechnologies to help farmers avoid pest damage and control weeds.  As reflected by farmers' adoption, these technologies offer farmers significant economic benefits.  The technologies have decreased production costs for crops and they have led to a significant reduction in the amount of management time needed to grow crops, in part because they greatly simplified the treatment of insects and weeds.

16.    Before the introduction of Bayer CropScience's earlier Roundup Ready® seeds, farmers often had to apply three or more different herbicides to achieve the same control of weeds that has been achieved using Roundup Ready® seeds together with glyphosate as the sole herbicide, and Roundup Ready® Flex was developed to increase crop tolerance to glyphosate.

17. The next generation of Bayer CropScience technologies, XtendFlex® seeds are used with glyphosate herbicide in combination with dicamba or both dicamba and glufosinate herbicides to combat weeds which may be resistant to one or more herbicides. XtendFlex® technologies enable farmers to reduce tillage of the soil with heavy equipment, decreasing erosion and soil loss.  The use of Bollgard II® cotton has similarly reduced the need for farmers to apply chemical pesticides to the cotton crop to prevent worm species from damaging the plants.

18. To commercialize its inventions, and protect its valuable intellectual property rights, Bayer CropScience licenses its technology to competitors and to individual farmers.  Farmers wishing to lawfully use the patented technology agree to abide by the terms of a license agreement (a "<u>Technology Stewardship Agreement</u>" or "<u>TSA</u>") that provides the farmer/licensee with the permission to use the valuable technology.  The TSA provides the licensed farmer, and only the licensed farmer, with the right to use the patented technology to grow a single commercial crop, the seeds of which will also contain the patented technology.  Farmers may not save seed containing the patented technology from harvested crops for replanting on their own fields, nor may they save seed to sell or transfer to other farmers for replanting.  A farmer who wishes to grow crops from seeds containing Bayer CropScience's technology must obtain the seed from an authorized dealer each planting season.

## Herbicides and Biotechnologies

19. Roundup® is a non-selective glyphosate-based herbicide manufactured by Bayer CropScience that, when applied to crops that are not tolerant to glyphosate, causes

severe injury or destruction to non-tolerant plants, including cotton varieties that do not contain glyphosate-tolerant technology. Cotton displays unique and identifiable symptomology after having been sprayed with Roundup® or other herbicides containing glyphosate, unless said cotton contains glyphosate-tolerant technology such as Roundup Ready® Flex or XtendFlex®.

20.     XtendiMax® with VaporGrip® is a selective dicamba-based herbicide manufactured by Bayer CropScience that, when applied to crops that are not tolerant to dicamba, causes severe injury or destruction to non-tolerant plants, including cotton varieties that do not contain the patented XtendFlex™ technology. Cotton displays unique and identifiable symptomology after having been sprayed with XtendiMax® or other herbicides containing dicamba, unless it contains the patented XtendFlex™ technology.

21.     Glufosinate-based herbicides are non-selective herbicides that, when applied to crops that are not tolerant to glufosinate, cause severe injury or destruction to non-tolerant plants, including cotton varieties that do not contain glufosinate-tolerant technology, such as the patented XtendFlex™ technology. Cotton displays unique and identifiable symptomology after having been sprayed with herbicides containing glufosinate, unless said cotton contains glufosinate-tolerant technology.

22.     Bayer CropScience's Roundup Ready® Flex and XtendFlex™ technology is protected under multiple United States patents, including the '861, and '888 patents. These patents were issued and assigned to Monsanto Technology LLC and exclusively licensed to Bayer CropScience prior to the events giving rise to this action.

23. Bayer CropScience's Bollgard II® technology is protected under multiple United States patents, including the '907 patent. This patent was issued and assigned to Monsanto Technology LLC and exclusively licensed to Bayer CropScience prior to the events giving rise to this action.

### Biotechnology Licensing

24. Bayer CropScience licenses the use of Bollgard II®, Roundup Ready® Flex and XtendFlex™ seed technologies only to farmers at the retail marketing level through a limited use license commonly referred to as a TSA.

25. Farmers are not authorized to use Bayer CropScience's patented seed technologies unless they sign a TSA.

26. Among others things, the express terms of the TSA prohibit licensees from saving harvested seed containing the patented technologies for planting purposes, or from selling, transferring or supplying saved seed to others for planting. Meaning, the use of the licensed seed is expressly limited to the production of a single commercial crop.

27. Only authorized licensees are permitted to sell seed containing Bayer CropScience's patented biotechnologies.

28. Defendant is not authorized to sell seed containing Bayer CropScience's patented biotechnologies.

### Biotechnology Marketing and Branding

29. Bayer CropScience is in the business of developing, manufacturing, licensing, and selling agricultural biotechnology, agricultural chemicals, and agricultural products. After the investment of substantial time, expertise, and expense, Bayer

CropScience developed biotechnologies that result in plants having: tolerance to glyphosate-based (such as Roundup Ultra®, Roundup UltraMAX®, Roundup WeatherMAX®, and Touchdown®) herbicides or triple tolerance to glyphosate-based, dicamba-based, and glufosinate-based herbicides. Bayer CropScience's investments have also produced separate biotechnology that results in plants producing *Bacillus thuringiensis* (Bt) insecticidal proteins that control certain insect species (including budworms, bollworms, and armyworms) that are pests of plants, including cotton.

30. Cotton seed containing these biotechnologies is marketed by Bayer CropScience under multiple trade names, including Bollgard II®, Roundup Ready® Flex and XtendFlex™.

## Product Labeling

31. Bayer CropScience places, on the labeling of its bags and multi-bag containers containing Bollgard II® seed technology, the required statutory notice that its Bollgard II® technology is patented. In particular, each bag and multi-bag container of seed containing the Bollgard II® technology is marked with notice of the '907 patent.

32. Bayer CropScience places, on the labeling of its bags and multi-bag containers containing Roundup Ready® Flex seed technology, the required statutory notice that its Roundup Ready® Flex technology is patented. In particular, each bag and multi-bag container of Roundup Ready® Flex seed is marked with notice of at least the '861 patent.

33. Bayer CropScience places, on the labeling of its bags and multi-bag containers containing XtendFlex™ seed technology, the required statutory notice that its

XtendFlex™ technology is patented. In particular, each bag and multi-bag container of XtendFlex™ seed is marked with notice of at least the '861 and '888 patents.

### The Cotton Ginning Process

34. The saving and planting of saved, patented cotton seed is an involved process requiring active, not accidental, participation and direction by the delinter and farmer.

35. Cotton seed is contained within the cotton boll. The lint produced by the cotton plant is an extension of the seed coat and is physically attached to the cotton seed in the boll.

36. The harvested cotton crop is generally compressed into modules containing the harvested lint and seed, assigned an identification number, and eventually transported to the gin for processing. The ginning process separates the lint from the cotton seed. Cotton lint, used in, among other things, the manufacture of clothing, is the primary commodity from the cotton crop. The cotton seed, used in, among other things, the production of cotton seed oil, is the secondary commodity of the harvest. The entity ginning the cotton typically keeps the cotton seed as payment.

37. An individual planning to save cotton seed from a prior harvest must direct the cotton gin operator to capture specific seed from his harvest by identifying the modules from which the gin is to capture seed.

38. The ginning process does not remove all the lint from the cotton seed and ginned seed containing a small amount of lint is commonly referred to as "fuzzy seed." That fuzzy seed, while viable and able to produce a cotton plant, cannot be used with

modern planting equipment unless the remaining lint is removed. To remove the residual lint from the fuzzy seed, the farmer must transfer, or have transferred, the fuzzy seed to a delinter (delinting company or individual) or delint the cotton seed himself. The delinting process removes the residual lint from the cotton seed with acid. The only reason for delinting fuzzy cotton seed is for planting a subsequent harvest. The delinted cotton seed maybe treated with a fungicide and is typically bagged for planting.

### B. Defendant's Conduct

39. Defendant does not have a license from Bayer CropScience to purchase, use, sell, or offer for sale the patented seeds at issue.

40. Defendant previously signed a TSA in 1999 providing him with a license to purchase and use some of Bayer CropScience's technologies pursuant to that license. That license, however, was terminated in or around 2010. Willis, therefore, fully understood the need to have a license from Bayer CropScience before using, selling, or offering to sell seed with Bayer CropScience's technology. Willis has never had a license to sell or offer for sale seed containing Bayer CropScience's patented traits.

41. Any making, use, offers to sell, or sale of the patented seeds by Defendant constitutes direct and willful patent infringement.

42. Additionally, on information and belief, at or before the ginning process, Defendant instructed one or more gins, such as Lubbock Cotton Growers, to catch specific varieties of seed that Defendant knew were in specific modules from cotton that farmers harvested for the purposes of delinting and selling that infringing seed.

43. In addition, on information and belief, Defendant obtained from one or more farmers (or agreed to sell on behalf of one or more farmers) specific varieties of caught seed that Defendant knew were covered by Bayer CropScience's patents for the purposes of delinting and selling such infringing seed. Thus, Defendant also induced and contributed to patent infringement by other farmers in the farming community.

44. Defendant is the central figure in much of the seed saving activity in the Lubbock County area.

45. Defendant knowingly, intentionally, and willfully committed patent infringement by making, using, offering to sell, or selling seed with the patented Bollgard II® and/or XtendFlex™ cotton seed technology (which was saved from a harvest of cotton with these patented technologies) without authorization from Bayer CropScience. Defendant also induced and contributed to patent infringement by others.

46. Defendant sold cotton seed to one or more farmers in the Lubbock County, Texas area for planting as a crop. That cotton seed contains Bayer CropScience's patented Bollgard II® technology and was caught from a cotton gin and delinted by Defendant at his facility in Lubbock County, Texas. One or more of the farmers, in turn, planted the unauthorized cotton seed. Bayer CropScience has not licensed Defendant the right to sell or offer for sale seed containing any of Bayer CropScience's patented technologies, including Bollgard II®, Roundup Ready® Flex and XtendFlex®.

47. Defendant sold, offered to sell, and/or transferred saved infringing cotton seed to other farmers who expressed an interest in planting cotton seed containing Bayer CropScience's patented technologies for an amount significantly less than the price of the

same or substantially the same cotton having the same patented technologies charged by an authorized vendor. At other times, Defendant took delivery of patented seed caught by other farmers and delinted that patented seed for those farmers.

48. Defendant offered to sell and transfer saved infringing cotton seed to farmers in the Lubbock County, Texas area including other patented biotechnologies of Bayer CropScience, including in particular the XtendFlex™ technology.

## VI.   CAUSES OF ACTION

### COUNT I:
### PATENT INFRINGEMENT-Patent No. 7,223,907

49. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

50. On May 29, 2007, the '907 patent was duly and legally issued to Monsanto Technology LLC for an invention in "Cotton event MON15985 and compositions and methods for detection thereof."

51. Monsanto Technology LLC is the owner by assignment of all rights, title and interest in and to the '907 patent, and Bayer CropScience LP is the exclusive licensee.

52. Defendant directly infringed the '907 patent by making, using, offering to sell, selling, or importing cotton seed having the Bollgard II® technology embodying the patented invention without authorization from Bayer CropScience, and Defendant will continue this unlawful activity unless enjoined by this Court.

53. Defendant also induced and contributed to infringement of the '907 patent and will continue to do so unless enjoined by this Court.

54. Defendant induced and contributed to infringement by selling seed with Bayer CropScience's patented technology to other farmers, knowing the seeds were under patent protection. In addition, Defendant intended and instructed the farmers that they were able to plant the seeds as a crop. Defendant, therefore, knowingly induced famers to infringe Bayer CropScience's patent. In addition, on information and belief, Defendant induced and contributed to infringement by delinting saved seed for farmers to plant, knowing that said saved seed was under patent protection. As such, Defendant is liable for induced and contributory infringement.

55. Defendant's infringing activities were conducted with full knowledge and with notice that the Defendant was in violation of Bayer CropScience's patent rights.

56. Defendant's actions have damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

57. Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

58. Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, on information and belief, damages should be trebled pursuant to 35 U.S.C. § 284 in light of

the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

59. The infringing activity of the Defendant brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285. Thus, Bayer CropScience requests the award of reasonable attorney's fees and costs.

## COUNT II:
## PATENT INFRINGEMENT-Patent No. 7,381,861

60. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

61. On June 3, 2008, the '861 patent was duly and legally issued to Monsanto Technology LLC for an invention in "Cotton event MON 88913 and compositions and methods for detection thereof."

62. Monsanto Technology LLC is the owner by assignment of all rights, title and interest in and to the '861 patent, and Bayer CropScience LP is the exclusive licensee.

63. Defendant directly infringed the '861 patent by making, using, offering to sell, selling or importing seed having the Roundup Ready® Flex and/or XtendFlex™ technology embodying the patented invention without authorization from Bayer CropScience, and will continue to do so unless enjoined by this Court.

64. Defendant also induced and contributed to infringement of the '861 patent and will continue to do so unless enjoined by this Court.

65. On information and belief, Defendant induced and contributed to infringement by selling seed with Bayer CropScience's patented technology to other farmers, knowing the seeds were under patent protection. In addition, Defendant intended and instructed the farmers that they were able to plant the seeds as a crop. Defendant, therefore, knowingly induced famers to infringe Bayer CropScience's patent. In addition, on information and belief, Defendant induced and contributed to infringement by delinting saved seed for farmers to plant, knowing that said saved seed was under patent protection. As such, Defendant is liable for induced and contributory infringement.

66. The Defendant's infringing activities were conducted with full knowledge and with notice that Defendant was in violation of Bayer CropScience's patent rights.

67. Defendant's actions damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

68. Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

69. Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue.

70. Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Bayer CropScience requests the award of reasonable attorneys' fees and costs.

## COUNT III:
## PATENT INFRINGEMENT-Patent No. 8,420,888

71. Each and every allegation set forth in the above-numbered paragraphs is hereby incorporated by reference just as if it was explicitly set forth hereunder.

72. On April 16, 2013, the '888 patent was duly and legally issued to Monsanto Technology LLC for an invention in "Chloroplast transit peptides for efficient targeting of DMO and uses thereof."

73. Monsanto Technology LLC is the owner by assignment of all rights, title and interest in and to the '888 Patent, and Bayer CropScience LP is the exclusive licensee.

74. Defendant directly infringed the '888 patent by making, using, offering to sell, selling or importing seed having the XtendFlex™ technology embodying the patented invention without authorization from Bayer CropScience, and will continue to do so unless enjoined by this Court.

75. Defendant also induced and contributed to infringement of the '888 patent and will continue to do so unless enjoined by this Court.

76. On information and belief, Defendant induced and contributed to infringement by selling seed with Bayer CropScience's patented technology to other farmers, knowing the seeds were under patent protection. In addition, Defendant

intended and instructed the farmers that they were able to plant the seeds as a crop. Defendant, therefore, knowingly induced famers to infringe Bayer CropScience's patent. In addition, on information and belief, Defendant induced and contributed to infringement by delinting saved seed for farmers to plant, knowing that said saved seed was under patent protection. As such, Defendant is liable for induced and contributory infringement.

77. The Defendant's infringing activities were conducted with full knowledge and with notice that Defendant was in violation of Bayer CropScience's patent rights.

78. Defendant's actions damaged Bayer CropScience and will continue to injure Bayer CropScience, unless and until such infringement is enjoined by this Court.

79. Pursuant to 35 U.S.C. § 283, Bayer CropScience is entitled to injunctive relief in accordance with the principles of equity to prevent the infringement of rights secured by its patents.

80. Pursuant to 35 U.S.C. § 284, Bayer CropScience is entitled to damages adequate to compensate for the infringement, although in no event less than a reasonable royalty, together with interest and costs to be taxed to the infringer. Further, damages should be trebled pursuant to 35 U.S.C. § 284 in light of the Defendant's knowing, willful, conscious, and deliberate infringement of the patent rights at issue

81. Defendant's infringing activity brings this cause within the purview of the exceptional case contemplated by 35 U.S.C. § 285, and thus Bayer CropScience requests the award of reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Bayer CropScience LP and Monsanto Technology LLC pray that process and due form of law issue to Defendant requiring him to appear and answer the allegations of this complaint, and that after due proceedings are had, there be judgment in favor of Plaintiffs and against Defendant, providing the following relief to Plaintiffs:

A.  Entry of judgment in favor of Plaintiffs and against the Defendant that Defendant is infringing and have directly and indirectly infringed the '907, '861, and '888 patents, and that such infringement has been unlawful, willful and deliberate;

B.  Entry of judgment in favor of Plaintiffs and against the Defendant for damages, together with interest and costs, to compensate Plaintiffs for Defendant's patent infringement;

C.  A finding that damages should be trebled pursuant to 35 U.S.C. § 284 in light of Defendant's knowing, willful, conscious, and deliberate infringement;

D.  A finding that this case is exceptional under 35 U.S.C. § 285, thereby entitling Plaintiffs to the award of reasonable attorneys' fees and costs;

E.  Entry of a preliminary and permanent injunction against Defendant to prevent him from making, using, saving, cleaning, delinting, planting, selling, offering to sell, importing, or otherwise transferring, any of Plaintiffs' proprietary technologies, without express written permission from Plaintiffs;

F.  Entry of judgment in favor of Plaintiffs and against the Defendant for costs, expenses, and reasonable attorneys' fees incurred by Plaintiffs; and

G.   Such other relief as the Court may deem appropriate.

Dated:  March 12, 2021

Respectfully submitted,

**THOMPSON COBURN LLP**

By */s/ Nicole L. Williams*
   Nicole L. Williams
   Texas Bar No. 24041784
   nwilliams@thompsoncoburn.com

   2100 Ross Avenue, Suite 600
   Dallas, TX 75201
   214-629-7113
   972-629-7171 (facsimile)

   Jeffrey Masson, MO Bar No. 60244
   (*pro hac vice* forthcoming)
   jmasson@thompsoncoburn.com
   Daniel Cox, MO Bar No. 38902
   (*pro hac vice* forthcoming)
   dcox@thompsoncoburn.com
   Matthew Bober, MO Bar No. 59825
   (*pro hac vice* forthcoming)
   mbober@thompsoncoburn.com

   One U.S. Bank Plaza
   St. Louis, MO 63101
   314-552-6030
   314-552-7000 (facsimile)

   *Attorneys for Plaintiffs Bayer CropScience LP and Monsanto Technology LLC*