IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| BAYER CROPSCIENCE LP and MONSANTO TECHNOLOGY LLC,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>TEDDY WILLIS,<br><br>　　　　Defendant. | Case No. <u>5:21-cv-00070-H</u> |

**PLAINTIFFS' RESPONSE TO MOTION TO QUASH,
<u>FOR PROTECTION, AND FOR OTHER RELIEF</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 3

III.    RESPONSE TO MOTION TO QUASH ............................................................... 9

        A.     Legal Standard ........................................................................................... 9

        B.     Fortenberry has not met his burden of establishing that compliance
               with Bayer's subpoena would be unreasonable and unduly burdensome ....... 10

               1.     Information sought in each category is directly relevant to
                      Bayer's infringement claims ............................................................ 11

               2.     The needs of the case in obtaining the information sought
                      compels denial of Fortenberry's Motion ........................................ 14

               3.     Fortenberry's allegations of overbreadth are improper and
                      weigh in favor of denying Fortenberry's Motion ........................... 15

               4.     The time period covered by the Requests is limited to just three
                      years and is not overbroad ............................................................... 16

               5.     Bayer's Requests are described with sufficient particularity ............. 17

               6.     Fortenberry's unspecified and unexplained burden is minimal,
                      at best .............................................................................................. 17

IV.     RESPONSE TO MOTION FOR PROTECTIVE ORDER .................................. 18

        A.     Legal Standard ......................................................................................... 18

        B.     Fortenberry fails to specify any undue burden or harassment and fails
               to identify good cause for A Motion for Protection ..................................... 20

               1.     Information sought is relevant and no undue burden exists ............... 20

               2.     Fortenberry fails to make a showing of good cause for a
                      protective order ............................................................................... 21

        C.     Fortenberry should be ordered to pay Bayer's attorney's fees in
               prosecuting this response ........................................................................... 22

V.      CONCLUSION ................................................................................................... 23

CERTIFICATE OF SERVICE ....................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39 (N.D. Tex. 2015) ............................................................................3, 16, 17

*Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444 (N.D. Tex. 2015) ....................10

*Axcess Int'l, Inc. v. Baker Botts, L.L.P.*, No. 3:10-CV-1383-F, 2012 WL 12884745 (N.D. Tex. Mar. 30, 2012) .............................................................................15

*Banca Pueyo, S.A. v. Lone Star Fund IX (U.S.), L.P.*, No. 3:18-MC-100-M, 2019 WL 12375546 (N.D. Tex. Nov. 29, 2019).................................................................18

*Bayview Loan Servicing, LLC v. Standard Guar. Ins. Co.*, No. SA-07-CA-394-XR, 2008 WL 11333992 (W.D. Tex. June 30, 2008)................................................21

*Booth v. City of Dallas*, 312 F.R.D. 427 (N.D. Tex. 2015) ....................................................22

*Bowman v. Monsanto Co.*, 569 U.S. 278 (2013) .......................................................................4

*Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88 (N.D. Tex. 1994) ....................................20

*Chaput v. Griffin*, No. 3:14-MC-131-G-BN, 2014 WL 7150247 (N.D. Tex. Dec. 16, 2014).................................................................................................................10, 16

*Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2017 WL 11679076 (N.D. Tex. May 15, 2017) .............................................................................................11

*Compass Bank v. Williams*, No. 5:12-CV-186, 2015 WL 13119386 (S.D. Tex. Mar. 2, 2015).................................................................................................................22

*Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 425098 (E.D. Tex. Feb. 8, 2021) ...................................................................................17

*Edgefield Holdings v. Gilbert*, No. 3:17-MC-74-N-BN, 2018 WL 1138516 (N.D. Tex. Mar. 2, 2018) ...............................................................................................17

*Gaedeke Holdings VII, Ltd. v. Mills*, No. 3:15-MC-36-D-BN, 2015 WL 3539658 (N.D. Tex. June 5, 2015).................................................................................20

*Garcia v. Prof'l Contract Servs., Inc.*, A-15-CV-585-LY, 2017 WL 187577 (W.D. Tex. Jan. 17, 2017).............................................................................................19

*Heller v. City of Dallas*, 303 F.R.D. 466 (N.D. Tex. 2014)....................................................18

*LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07CV90, 2009 WL 10677426 (E.D. Tex. Mar. 2, 2009) .............................................................................13

*Meisenheimer v. DAC Vision Inc.*, No. 3:19-cv-1422-M, 2019 WL 6619198 (N.D. Tex. Dec. 4, 2019) ...............................................................19, 20

*MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018) .......................................19

*Mfrs. Collection Co. v. Precision Airmotive, LLC*, No. 3:12-CV-853-L, 2014 WL 2095367 (N.D. Tex. May 20, 2014) .....................................................19

*Ogbonna v. Usplabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 12489696 (W.D. Tex. Sept. 10, 2014) .........................................................................22

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .......................................12

*Park Bd. Ltd. v. State Auto. Mut. Ins. Co.*, No. 4:18-CV-00382, 2019 WL 7067135 (E.D. Tex. Dec. 23, 2019) ..............................................................14

*Pimentel v. DRY MTN Xpress, LLC*, No. CV SA-14-CA-341-JWP, 2015 WL 13796697 (W.D. Tex. Feb. 5, 2015) ..........................................................17

*Rocha v. Metro. Life Ins. Co.*, No. SA-05-CA-60-FB, 2005 WL 8156353 (W.D. Tex. Sept. 27, 2005) .........................................................................20

*Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) .............................................20

*Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250 (N.D. Tex. 2017) .................19

*Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023 (S.D. Tex. Feb. 21, 2012) ...................................14, 21

*Simple Hosp. LLC v. United Fire & Cas. Co.*, No. 4:10-CV-03652, 2011 WL 13134282 (S.D. Tex. Dec. 22, 2011) ........................................................15

*Stephens v. Big Spring Herald, Inc.*, No. 1:19-CV-123-H, 2020 WL 11577890 (N.D. Tex. Aug. 19, 2020) .........................................................................21

*Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110 (5th Cir. 1994) .........................................23

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004) .....................10

**Rules**

Federal Rule of Civil Procedure 26 .....................................................19, 22, 23

Federal Rule of Civil Procedure 37 ...........................................................22, 23

Federal Rule of Civil Procedure 45 ...................................................... *passim*

# I.     INTRODUCTION

Seth Fortenberry is not entitled to any protection or relief from this Court, and he should be ordered to produce the information requested in the subpoena and to appear for deposition. Defendant Willis sold seed containing Plaintiffs Bayer CropScience LP and Monsanto Technology LLC ("Bayer") patented technologies. Willis testified that some of the seed he sold was brought to him by Fortenberry for delinting. After it was delinted, and presumably without Fortenberry's knowledge, Willis sold the seed to other growers for planting.

Willis doesn't know what technology was in that seed. But Fortenberry's records and testimony will provide the necessary information, as saving cotton seed is an intentional process requiring active participation by the farmer wishing to save seed. In short, the farmer has to direct the gin to catch specific seed from specific fields; otherwise, that seed will go into a general seed pile. Once caught, the seed then is transferred to the delinter to remove the lint. The only reason to do that is to prepare the seed for planting. And it's essential for the farmer to know what traits are in the caught and delinted seed because those traits confer, for example, resistance to certain herbicides. If the saved seed crop is sprayed with the correct herbicide, one that the plants are resistant to, the weeds die and the cotton plants survive. But if sprayed with the wrong herbicide, the cotton plants are killed.

Contrary to his representations to this Court that he's an organic and conventional farmer, Fortenberry bought seed containing patented Bayer traits pursuant to his Technology Stewardship Agreement in 2017, 2018, and 2019. Those purchases were not in small quantities. For example, in 2019 he bought enough cotton seed with Bayer patented traits to plant over 1,950 acres. Despite implying otherwise in his Motion, Fortenberry intentionally had and was using Bayer's patented cotton seed technologies.

- 1 -

As part of the discovery in this case, Bayer conducted a sampling and inspection of Willis's facility, which contained bulk bag after bulk bag, each the size of a full pallet, full of seed that Willis testified originated from Fortenberry. There were 21 bulk bags in total. That's enough seed to plant around 5,500 acres. There were also multiple seed piles of fuzzy, or non-delinted, seed that originated from Fortenberry.

Willis testified that the seed from Fortenberry was brought there in 2020, and that, after much of it was delinted, Fortenberry later told Willis to dispose of the seed because it "did not pass quality." Willis doesn't know what "did not pass quality" means, and Fortenberry is the one who made the statement to Willis. Fortenberry is the only person who can testify to the meaning. As Willis testified in his deposition, "it would be a waste of time and money" for a farmer to spend the time and expense on the delinting process if the delinted seed isn't going to be planted.

Bayer's discovery requests to Fortenberry here begin in 2019, as it was his 2019 crop he had ginned and transferred to Willis for delinting in 2020. Fortenberry represents he had "minor interactions" with Willis in 2019. That may be true, but in 2020, the year of Willis's activities, Fortenberry was Willis's largest delinting customer.

Bayer tested samples of seed in Willis's facility that originated from Fortenberry. That seed tested positive for Bayer patented seed traits – the same traits that Fortenberry previously purchased, including in 2019.

The discovery requests are specifically tailored to track the seed that originated from Fortenberry through the planting, ginning, and delinting process so that additional infringement of Willis may be identified. It is not a defense and the Court should not grant Fortenberry's motion simply because that tracking may also identify infringement by Fortenberry.

Because he has failed to meet his heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive, the Court should deny Fortenberry's motion and order him to produce the requested information and appear for deposition. Moreover, given Fortenberry's misrepresentations and obstruction of the discovery process, Bayer requests an award of its attorneys' fees and cost in preparing this Response and seeking to compel the requested and relevant discovery.

## II.     FACTUAL BACKGROUND

The following background facts will help frame the issues before the Court—and show that Fortenberry's Motion[1] has no basis in fact or law.

### Bayer's patented seed traits

Cotton seed with the Bollgard 2, Roundup Ready Flex, and/or XtendFlex traits are protected by one or more of Bayer's patents. *See* Declaration of Robert Nixon, attached as Ex. A, at ¶ 4. Conventional cotton seed does not contain these patented traits. *Id.* at ¶ 5.

### Bayer's Technology Stewardship Agreement (TSA)

To commercialize its inventions, and protect its valuable intellectual property rights, including the traited seed at issue here, Bayer CropScience licenses its technology to competitors and to individual farmers. Farmers wishing to lawfully use the patented technology agree to abide by the terms of a license agreement (a "Technology Stewardship Agreement"

---

[1] Plaintiff's brief includes a "[d]iscussion of [o]bjections," which appear to be arguments in support of his motions to quash and motion for protective order. To the extent they are meant as individual objections, Fortenberry's objections amount to improper general and/or boilerplate objections. *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) (noting that objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014)).

or "TSA") that provides the farmer/licensee with the permission to use the valuable technology pursuant to the terms of that agreement.[2]

The TSA provides the licensed farmer, and only the licensed farmer, with the right to use the patented technology to grow a single commercial crop, the seeds of which will also contain the patented technology. Farmers may not save seed containing the patented technology from harvested crops for replanting on their own fields, nor may they save seed to sell or transfer to other farmers for planting. *See Bowman v. Monsanto Co.*, 569 U.S. 278, 281 (2013). A farmer who wishes to grow crops from seeds containing Bayer CropScience's technology must obtain the seed from an authorized dealer each planting season. Farmers are not authorized to use Bayer CropScience's patented seed technologies unless they sign a TSA. Only authorized seed seller licensees are permitted to sell seed containing Bayer CropScience's patented biotechnologies.

Willis is not currently authorized to use, sell, or offer for sale the patented cotton seeds at issue.

### The cotton ginning and delinting process

Plaintiffs' Complaint describes the cotton ginning and delinting process. *See* Compl. at ¶¶ 34-38. As explained in the Complaint, and as confirmed by Willis in his deposition (discussed below), the saving and planting of saved, patented cotton seed is an involved, deliberate process requiring active, not accidental, participation and direction by the delinter and farmer. *Id.* at ¶ 34. The only reason for delinting fuzzy cotton seed is for planting a subsequent crop.

---

[2] Fortenberry executed a 2012 TSA, and a complete copy of that agreement is attached as Ex. B. This was previously provided electronically to Fortenberry's counsel on October 9, 2020.

*Fortenberry's significant purchases of seed containing Bayer's patented seed technologies*

In 2017, Fortenberry purchased at least seven bags of Bollgard 2 Roundup Ready Flex and 235 bags of Bollgard 2 XtendFlex, for a total of 242 bags of Bayer traited cotton seed. Nixon Decl. at ¶ 7. In 2018, Fortenberry bought at least 57 bags of XtendFlex. *Id.* In 2019, Fortenberry bought at least 200 bags of Bollgard 2 XtendFlex and 98 bags of XtendFlex, for a total of 298 bags of Bayer traited cotton seed. *Id.* Fortenberry had no reported purchases in 2020—the same year he was Willis's biggest delinting customer. *Id.* A standard 230,000 seed count bag of cotton seed, planted at 35,000 seeds per acre, will plant just over 6.57 acres. *Id.* at ¶ 8. At that rate, the 298 bags purchased in 2019 would have planted over 1,950 acres. *Id.*

*Defendant Willis and his business dealings with Seth Fortenberry, his biggest delinting customer in 2020*

Bayer sued Willis for patent infringement alleging that in 2020 and 2021 he caused it financial harm by selling, without authorization, cotton seed containing Bayer's patented technology. *See* Bayer's Complaint, Dkt. 1. This infringing cotton seed made, used, offered for sale, and/or sold by Willis, without authorization from Bayer, was saved from harvesting such cotton seed planted in prior years. *Id.* As relevant here, Willis further induced and contributed to patent infringement by selling this infringing cotton seed to other farmers—or delinting such cotton seed for other farmers for them to plant—without authorization from Bayer. *Id.*

During the course of its investigation of Willis before filing this lawsuit, Bayer learned that Seth Fortenberry was hauling large quantities of cotton seed to and from Willis's facility. Consequently, counsel for Bayer asked Fortenberry to produce certain farming information. *See* Ex. C to Dkt. 34. To expedite the process, Bayer's counsel enclosed a consent form that

would have allowed Bayer to gather the information on Fortenberry's behalf. *Id.* Despite one being attached to Fortenberry's motion, neither Fortenberry nor his counsel returned the executed consent form.[3] Nor did they comply with Bayer's repeated requests.

Fortenberry argues he does not have the obligation to produce records pursuant to his TSA. The Motion indicates that "Mr. Fortenberry denied that he signed" the TSA. Dkt. 34 at ¶ 2.03. Curiously, that statement is not in Fortenberry's declaration. And likely for good reason, as his signature on his 2012 TSA mirrors those on property records and the signature on his affidavit in this matter.

| 2012 TSA Signature | 2011 Notarized Signature |
|---|---|
| Name | SETH FORTENBERRY |
| 2022 Affidavit Signature | 2021 Notarized Signature |
| SETH FORTENBERRY | SETH FORTENBERRY |

A true and accurate copy of Fortenberry's 2012 TSA in the quality previously provided to counsel is attached as Exhibit B. The 2011 and 2021 notarized signatures obtained from public documents are attached here to as Exhibit C.

### *Sampling and testing of cotton seed in Willis's facility identified by Willis to be Fortenberry's*

After Bayer filed this lawsuit in March 2021, Bayer conducted an inspection and sampling at Willis's facility. That inspection and sampling was conducted by ABG Ag

---

[3] Exhibit C to Fortenberry's Motion contains what purports to be a copy of an executed consent form. Fortenberry presents the consent form as if it was executed and produced to Plaintiffs. It was not. Had it been produced, Plaintiffs would have many of the 2019 documents sought here.

Services, Inc. (ABG) on April 29, 2021. *See* Declaration of Dr. Fritz Koppaschek, ¶¶ 1-4, attached as Ex. D. During the inspection and sampling, Willis identified certain mini bulk seed containers and other seed at the facility as coming from Seth Fortenberry. *Id.* at ¶ 5. Twenty-one delinted mini bulks full of seed plus three additional undelinted seed piles originating from Fortenberry were at Willis's facility at the inspection.[4] *Id.* at ¶ 5-6. This seed was brought to Willis to delint in 2020 from the 2019 harvest. Willis, Mar. 3, 2022 Dep. at pp. 72:5-73:2.

Two types of tests were performed to confirm the presence of Bayer patented traits in this seed. First, using a protein or strip test, ten seeds from each of the 21 mini bulks and three seed piles were tested. All 240 seeds tested contained one or more patented Bayer technology. Curtis Hannah Decl. at ¶¶ 6-9, attached as Ex. E.

For the second test, a TaqMan PCR test, seeds from each of the 21 bulk bags and three seed piles were tested. In total, results were obtained for 1,196 seeds through the PCR process. 1,191 had one or more patented Bayer trait. *Id.* at ¶¶ 10-12.

### *Willis's deposition testimony regarding his commercial relationship with Fortenberry*

Willis delints cotton for growers in the area. Willis Deposition, 03/03/2022, at 56:3-13; 57:15-23; 58:2-12.[5] He bought the facility in 2019 and began operating it in 2020. *Id.* at 31:23-24; 39:8-18. Usually, growers bring the seed to Willis's cotton facility, but occasionally Willis picks that seed up from other growers. *Id.* at 58:13-22. Willis also stores seed at his facility that belongs to other growers. *Id.* at 61:4-23. Fuzzy cotton seed is brought to Willis's facility, and he delints it. *Id.* at 62:20-63:2. Willis does not keep records, invoices, or any other

---

[4] A full mini bulk contains about 40 commercial bags or units of cotton seed. Nixon Decl. at ¶ 9. Looking conservatively only at the already delinted seed, 21 full mini bulks would contain the equivalent of approximately 840 bags or units of seed. If planted at 35,000 seeds per acre, that amount of seed would plant over 5,500 acres.

[5] The cited excerpts of Willis's deposition testimony are attached as Ex. F.

documentation for his delinting activities. *Id.* at 56:9-18. Willis agreed with the accuracy of Bayer's description of the cotton ginning and delinting process in its Complaint. *Id.* at 63:3-66:13; 92:15-94:7.

The delinted seed goes back to the grower for planting. *Id.* at 66:14-17; 67:1-9. The discarded seed is referred to as culls. *Id.* at 66:18-22. The culls get bulked as well. *Id.* For every mini bulk of culls, there is a corresponding set of seed that is mature and goes back to the farmer for planting. *Id.* at 67:1-4. Although there are mini bulks of seed for growers at his facility, Willis testified that he has no written records of who these seeds belong to, and they are not otherwise identified. *Id.* at 69:22-71:3.

Willis testified that Seth Fortenberry is one of the growers that Willis gins and stores seeds for at his facility. *Id.* at 72:11-20. In fact, Fortenberry was Willis's largest delining customer in 2020. *Id.* at 72:19.24. Willis testified that Fortenberry asked him to discard his seed because supposedly it did not pass quality. *Id.* at 72:8-20; 73:3-13; 86:6-10. Willis admitted, though, that the seed Fortenberry asked him to discard was quality seed that was ready to be planted. *Id.* at 74:22-75:2. Willis agreed that it does not make financial sense for a grower to catch fuzzy seed at a gin, haul it to a delinter, pay the delinter to delint it and bag it, without knowing what seed it was (whether it was organic/conventional), and then claim to have it tested to find out whether it is organic or not. *Id.* at 75:3-76:5. As he put it, "It would be a waste of time and money." *Id.* at 76:5. Fortenberry abandoned his delinted seed at Willis's facility and told him to discard it. *Id.* at 76:6-18, 80:4-12.

Willis also admitted to selling seed that came from Fortenberry to multiple growers for planting. *Id.* at 103:24-104:16; 136:12-25.

***Bayer's Subpoena and Notice of Deposition of Fortenberry***

In light of Willis's testimony regarding his extensive delinting activities for Fortenberry, Bayer noticed Fortenberry's deposition for May 25, 2022. Dkt. 30. The subpoena directed Fortenberry to produce five categories of documents related to his farming operations in crop years 2019, 2020, and 2021:  (1) Farm Service Agency records; (2) documents relating to sampling and testing of his cotton seed that he had caught by a gin or otherwise; (3) all business records and communications between he and Willis; (4) his purchase records for cotton seed and herbicides; and (5) sales records (or other transfers to others) of cotton seed. Dkt. 30, Ex. A. Prior to the noticed date of his deposition, Fortenberry filed the pending motion to quash. Dkt. 34. Bayer understands from the meet and confer process, including Exhibit F to the Motion and correspondence attached as Exhibit G hereto, that Fortenberry is not objecting to sitting for a deposition or to producing records described in Category 3 above.

### III.    RESPONSE TO MOTION TO QUASH

#### A.    Legal Standard

Motions to quash a subpoena are governed by Federal Rule of Civil Procedure 45, and the Fifth Circuit has stated that "[g]enerally, modification of a subpoena is preferable to quashing it outright." *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir. 2004) (citation omitted). "The moving party has the burden of proof and must meet the heavy burden of establishing that compliance with the subpoena ***would be unreasonable and oppressive***." *Chaput v. Griffin*, No. 3:14-MC-131-G-BN, 2014 WL 7150247, at *2 (N.D. Tex. Dec. 16, 2014) (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998)) (emphasis added).

In deciding whether a subpoena is reasonable or unduly burdensome, the Court undertakes a case-specific inquiry and considers the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed.[6] *See Wiwa*, 392 F.3d at 818.

**B.      Fortenberry has not met his burden of establishing that compliance with Bayer's subpoena would be unreasonable and unduly burdensome.**

Although Fortenberry admits the relevance of information related to category 3 of the subpoena (namely, all business records and communications between he and Willis), he argues that Bayer should be able to obtain that discovery directly from Willis without unduly burdening Fortenberry. Dkt. 35 at 5-6. Just a few paragraphs later, however, Fortenberry indicates that the records sought are "accessible only by a small few directly affiliated with Fortenberry's farming operations." *Id.* at 6. Willis confirms that the records cannot be obtained from him, as he testified that he does not keep any records or documentation regarding his delinting activities. Willis Dep. at 56:9-18. This testimony and Fortenberry's own admission support the need for deposing Fortenberry since the relevant information was sought from but cannot be obtained from Willis, the party to the underlying lawsuit. *See Clapper v. Am. Realty Invs., Inc.*, No. 3:14-CV-2970-D, 2017 WL 11679076, at *1-2 (N.D. Tex. May 15, 2017).

Fortenberry's conclusory and unsubstantiated objections to producing information regarding the remaining four categories similarly lack merit and must be rejected. As detailed

---

[6] Moreover, "[t]he moving party opposing discovery must show how the requested discovery was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 449 (N.D. Tex. 2015) (citing *S.E.C. v. Brady*, 238 F.R.D. 429, 437-38 (N.D. Tex. 2006); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005)).

below, the 6-factor test used to evaluate the reasonableness of Bayer's subpoena weighs in favor of denying Fortenberry's motion and ordering Fortenberry to produce the requested information and appear for deposition.

### 1. Information sought in each category is directly relevant to Bayer's infringement claims.

The requested information is relevant to Bayer's infringement claims against Willis. The evidence demonstrates that Fortenberry did business with Willis, that Willis has been selling seed obtained from Fortenberry to other growers, and that seed from Fortenberry at Willis's facility at the 2021 inspection was full of Bayer patented traits. Where the seed originated from, as well as where Fortenberry purchased that seed from, is relevant to the underlying infringement claim and resulting damages. Fortenberry's extensive dealings with Willis make those interactions relevant to Bayer's claims against Willis.[7]

The FSA records sought in category 1 are relevant to Bayer's infringement claims against Willis. Fortenberry had his harvest from 2019 caught by a gin and transferred to Willis for delinting. As Willis explained in his deposition, Fortenberry had to have directed that seed from specific fields be caught and held for transfer to Willis for delinting. The information in the FSA records will help identify those fields. And for 2020 and 2021, the FSA records along with Fortenberry's testimony will show where delinted seed was planted and what subsequently happened to the seed transferred from Willis back to Fortenberry. In short, the FSA records will reveal what fields Fortenberry farmed in the years in question and, with his

---

[7] Fortenberry claims that, because he "had minor interactions with Defendant Teddy Willis in 2019," information sought as to that year is not relevant. Dkt. 35 at 5. Fortenberry misses the point. Fortenberry took his 2019 harvested cotton to Willis to delint in 2020, Fortenberry was Willis's biggest delinting customer in 2020, and Willis sold some of that seed to others without Fortenberry's knowledge. It is Fortenberry's 2019 harvest that was transferred to Willis to delint in 2020. As explained in the Complaint and as admitted by Willis in his deposition, the saving and planting of cotton seed is a two-way process involving the active and deliberate participation of both the delinter (Willis) and the grower (Fortenberry).

testimony, where seed was planted, on what fields, and on how many acres. As noted, Willis conceded at his deposition that saving and replanting cotton seed is an active, intentional process by the grower. The grower has to direct the gin operator to catch certain seed from certain fields. The grower then has to transfer that seed to the delinting facility, and later plant the delinted seed somewhere to grow a crop. Bayer needs to know – and has a right to know – the fields where Fortenberry grew cotton. Because the requested FSA records relate to Bayer's infringement claims, they are relevant and discoverable. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (stating that relevant information is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case").

Category 2 information relates to Fortenberry's knowledge about the seed that was delinted and the "testing" that was conducted on the delinted seed. Willis further testified that Fortenberry told him the delinted seed "did not pass quality," and documents relating to sampling or testing of seed caught by a gin are directly relevant to what this statement may mean. This information, as with each category, seeks information that is tied to Willis's direct infringement. The information sought in category 2, therefore, is relevant and discoverable.

Category 3 information is not at issue, as Fortenberry has agreed to produce it. *See* Ex. F to Dkt. 34 at 3.

The information sought in category 4, i.e., Fortenberry's seed purchase records, will allow Bayer to understand the source of Fortenberry's cotton seed, what seed Fortenberry had available to him for the years in question to save and transfer to Willis for delinting, and along with Fortenberry's testimony, what traits were in the seeds that Willis sold to other growers. Because the seed, identified as coming from Fortenberry, that Willis testified he sold to other

growers may be infringing seed, it is directly relevant to the claims in this suit. *See LG Elecs., Inc. v. Hitachi, Ltd.*, No. 5:07CV90, 2009 WL 10677426, at *3 (E.D. Tex. Mar. 2, 2009) (addressing issue of relevance in discovery of potentially infringing products and noting that relevant discovery includes the technical operation of the accused products as well as products "reasonably similar to any accused product.").

The requested herbicide purchase records, in category 4, are also relevant because they will show what herbicides were available to Fortenberry to control weeds in his fields. Bayer traits are in Fortenberry's cotton seed, and different traits allow for the use of different herbicide programs to control weeds. Purchase records of those herbicides are directly relevant to what seed was grown and what traits that seed did or did not have.

Finally, category 5 seeks information relating to any sales or transfers of the delinted, Bayer-traited seed by Fortenberry to others. Testing showed that all of the seed at Willis's facility that Fortenberry brought him in 2020 contained patented Bayer traits. Any seed Fortenberry picked up before that inspection may have also contained patented Bayer traits, and may have been sold or transferred by Fortenberry. This information is relevant to Bayer's infringement claims, as it will allow Bayer to stop any further infringement by informing those growers of its rights to the use of the seed.

Willis testified that he sold cotton seed that he delinted for Fortenberry. That seed was grown somewhere, from a crop planted by seed Fortenberry purchased and treated with chemicals Fortenberry purchased. Each of these categories is specifically and narrowly tailored to seek infringement information relevant to the scope of the infringement claim in this case. Bayer is entitled to know, and needs to have an accounting of, how much seed containing its patented trait is being saved, replanted, and sold, and where it is being grown. There may be

more infringement by Willis that Bayer can demonstrate through Fortenberry's farming records and deposition testimony concerning those records. *See Park Bd. Ltd. v. State Auto. Mut. Ins. Co*., No. 4:18-CV-00382, 2019 WL 7067135, at *4 (E.D. Tex. Dec. 23, 2019) (noting that the possibility of relevant information alone may be sufficient to warrant deposition).

Because the requested records will show the full scope of Willis's infringement, they are relevant and discoverable. *Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023, at *4 (S.D. Tex. Feb. 21, 2012) (finding that the relationship between nonparty hospital and plaintiffs was relevant to the damages plaintiffs sought, and the nonparty hospital failed to show extraordinary circumstances that would warrant quashing the subpoena in its entirety). Accordingly, the relevance factor weighs in favor of denying Fortenberry's motion to quash.

### 2. *The needs of the case in obtaining the information sought compels denial of Fortenberry's Motion.*

Factor 2 also weighs in favor of denying Fortenberry's motion, as the information sought is highly relevant, and the needs of the case outweigh any alleged burden. As discussed, the requested information seeks relevant information regarding the scope of infringement in this case, as well as related infringement, and the damages Bayer suffered as a result. To do that, Bayer must know what seed purchases Fortenberry had, how much cotton he delinted, what ground he farmed to cotton and thus where the saved seed transferred to Willis's facility for delinting came from, and how much seed he transferred or sold to other growers.[8] Bayer

---

[8] *See Axcess Int'l, Inc. v. Baker Botts, L.L.P.*, No. 3:10-CV-1383-F, 2012 WL 12884745, at *4 (N.D. Tex. Mar. 30, 2012) (finding in a malpractice case concerning dual representation of a client that the plaintiff also had "to evaluate the amount of monetary damages it incurred as a result of its alleged injury [to its intellectual property]. In order to do so, [the plaintiff] will need to analyze the financial benefits [the alleged infringer] allegedly enjoyed as a result of [their attorneys'] dual representation.").

needs this information for an accounting of how much seed containing its patented trait is being saved, replanted, and sold, and where it is being grown.

Bayer is entitled to, and requires, this information because it is tied to Willis's direct infringement. *Simple Hosp. LLC v. United Fire & Cas. Co.*, No. 4:10-CV-03652, 2011 WL 13134282, at \*1 (S.D. Tex. Dec. 22, 2011) (denying motion to quash finding that the "information [sought] would be highly relevant to determine any business losses which plaintiff may have incurred"). Additionally, there may be more infringement by Willis that Bayer can demonstrate through Fortenberry's records and deposition. Because Fortenberry used Willis to delint his seed, Bayer is entitled to information related to that delinted seed. The requested information is reasonably calculated to lead to the discovery of relevant information, so factor two weighs in favor of denying Fortenberry's motion to quash.

### 3. *Fortenberry's allegations of overbreadth are improper and weigh in favor of denying Fortenberry's Motion .*

The requests seek specific information that relates directly to the infringement at issue.[9] Fortenberry asserts that Bayer's requests are "phrased broadly and vaguely and seek information that does not appear to be connected, even loosely, with Defendant Teddy Willis and Plaintiff's claims against him." Dkt. No. 35 at 6. But he fails to detail specifically how the requests are vague or overbroad. Moreover, as indicated, Bayer's requests are relevant to its infringement claim against Willis, as they seek information regarding testing, selling, and/or planting of Bayer-traited cotton seed.

---

[9] A "non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. 2015) (citation omitted).

The subpoena to Fortenberry is narrowly drawn and limited to what is needed for the facts of this case. For example, the subpoena does not seek delinting records for Fortenberry's seed delinted by anyone other than Willis, banking records or other financial records, or other farming records that are not necessary.

Accordingly, Fortenberry has failed to meet his burden under Federal Rule 45 to establish overbreadth. *See Chaput*, 2014 WL 7150247, at *2.

### 4. *The time period covered by the Requests is limited to just three years and is not overbroad.*

Bayer's requests are limited to three years. The time period for the requested information is the year before and the year after cotton seed identified by Willis to be Fortenberry's was delinted. This time period covers the years related to the seed that would have been delivered to Willis since he has been in business.[10] This is more than reasonable under the facts of this case and the relevant case law. *See Pimentel v. DRY MTN Xpress, LLC*, No. CV SA-14-CA-341-JWP, 2015 WL 13796697, at *1 (W.D. Tex. Feb. 5, 2015) (finding discovery request seeking treatment providers for the past 10 years was not overly broad or unduly burdensome); *Edgefield Holdings v. Gilbert*, No. 3:17-MC-74-N-BN, 2018 WL 1138516, at *14 (N.D. Tex. Mar. 2, 2018) (noting that the movant did not offer specific explanation as to why requests going back five years—as opposed to two years—are inappropriate, and finding that the requested time period was reasonable).

---

[10] Fortenberry is incorrect when he says in his Motion that the documents sought here are the same as those Bayer's counsel asked for in his correspondence with Fortenberry's counsel. Dkt. 34 at 2. The subpoena asks for records from different years so as to tailor the information to Willis and the needs of this case. Fortenberry bought patented, Bayer-traited cotton seed in 2017, 2018, and 2019. Bayer could reasonably request records from all three years. To limit the burden on Fortenberry, however, Bayer's request only goes back to 2019, which is the most recent year that Fortenberry is known to have purchased cotton seed with Bayer technologies as well as the year of the harvest transferred to Willis for delinting.

Fortenberry does not cite any legal authority in support of his contention that three years is overbroad. Moreover, generic and boilerplate assertions of overbreadth are insufficient to meet a nonparty's burden to resist discovery under Rule 45. *See Skodam Films*, LLC, 313 F.R.D. 39, 46 (N.D. Tex. 2015). Accordingly, factor 4 weighs in favor of denying Fortenberry's motion to quash.

### 5. *Bayer's Requests are described with sufficient particularity.*

The requests are described with the requisite particularity.[11] *See Cunningham v. Concentrix Sols. Corp.*, No. 4:20-CV-00661, 2021 WL 425098, at \*1,\*4 (E.D. Tex. Feb. 8, 2021) (noting that requests including stubs, payroll registries, W-2s and 1099s were described with sufficient particularity). Factor 5 therefore weighs in favor of denying Fortenberry's motion to quash.

### 6. *Fortenberry's unspecified and unexplained burden is minimal, at best.*

Finally, any burden on Fortenberry is minimal, at best, and he fails to explain the nature of his burden. Fortenberry does not explain how the requested information is overbroad, unduly burdensome, or oppressive. Fortenberry has not submitted any competent evidence revealing the nature of his alleged burden. His say-so is conclusory and insufficient.[12] *See Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014) (failing to show how the requested discovery is overly broad, unduly burdensome, or oppressive makes an unsupported objection nothing

---

[11] For example, category 1 seeks, "Complete sets of your Farm Service Agency ("FSA") records including, the Producer Farm Data Report, Form 578 Farm Summary, and Form 578 Producer Print." Category 3 seeks "all business records/documents and all communications/correspondence (including emails, text messages, invoices, checks, etc.) between you and Defendant Teddy Willis."

[12] Fortenberry estimates that "it would take approximately four days to locate, pull, review and prepare for production" the requested FSA records. Ex. E to Dkt. 34 at ¶ 6. These and other estimated times in the Affidavit are inflated. For example, counsel routinely obtains these records, and a complete set of the requested FSA records can usually be available in the time it takes to drive to the local county FSA office. And now with COVID, the drive might not even be necessary, as the records can be sent by email.

more than unsustainable boilerplate.").[13] For records that Bayer can obtain for Fortenberry through a consent form (like FSA records, seed purchase records, and herbicide purchase records), if Fortenberry provides a properly executed consent form and identifies all locations where he did business, Bayer has always been and is still agreeable to collecting the records itself and providing copies of the collected records. Even with a consent form, however, some categories of records, like Fortenberry's communications with Willis, will require Fortenberry to collect the information.

Because Fortenberry has failed to meet his heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive, the Motion should be denied, and he should be ordered to produce the requested information and appear for deposition.

## IV.   RESPONSE TO MOTION FOR PROTECTIVE ORDER[14]

Fortenberry similarly fails to meet his burden to establish the need for a protective order to protect a him "from annoyance, embarrassment, oppression, or undue burden or expense."

### A.   Legal Standard

When "a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of [Federal Rule of Civil Procedure] 26(b)(1)." *MetroPCS v. Thomas*, 327 F.R.D. 600, 609 (N.D. Tex. 2018) (citation omitted).

---

[13] *See also Banca Pueyo, S.A. v. Lone Star Fund IX (U.S.), L.P.*, No. 3:18-MC-100-M, 2019 WL 12375546, at *4 (N.D. Tex. Nov. 29, 2019) ("And though '[d]isclosure to a competitor is presumptively more harmful than disclosure to a non-competitor,' the Court finds that Respondents have not carried their burden under Rule 45(d)(3) because they failed to identify any specific discovery requests that are burdensome or require disclosing trade secrets.").

[14] Fortenberry's motion and brief in support are titled as a motion for protection and discuss "certain protections" under Fed. R. Civ. P. 45 as well as Fed. R. Civ. P. 26. In an abundance of caution and to the extent Mr. Fortenberry's motion is construed as also a motion for protective order, Bayer addresses the motion in this Section.

Information must be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) (citation omitted); *see also Thomas*, 327 F.R.D. at 609-10.[15]

Like a motion to quash, the "burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Meisenheimer v. DAC Vision Inc*., No. 3:19-cv-1422-M, 2019 WL 6619198, at *2 (N.D. Tex. Dec. 4, 2019) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Courts have generally concluded that to obtain a protective order, the moving party must show both "good cause and ***a specific need for the protection***." *Id*. (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)) (emphasis added).

While courts have broad discretion in determining whether to impose a protective order, protective orders barring depositions are rarely granted, "and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co*., 593 F.2d 649, 651 (5th Cir. 1979); *see Bucher v. Richardson Hosp. Auth*., 160 F.R.D. 88, 92 (N.D. Tex. 1994) ("Protective orders prohibiting depositions are rarely granted.").

---

[15] "The scope of discovery is the same under both Federal Rules of Civil Procedure 45 and 26"—i.e., a party may discover any nonprivileged matter that is relevant to a party's claim or defense. *Garcia v. Prof'l Contract Servs., Inc.*, A-15-CV-585-LY, 2017 WL 187577, at *2 (W.D. Tex. Jan. 17, 2017). "[T]he threshold for relevance in discovery is low." *Mfrs. Collection Co. v. Precision Airmotive, LLC*, No. 3:12-CV-853-L, 2014 WL 2095367, at *1 (N.D. Tex. May 20, 2014) (citation omitted).

**B.**     **Fortenberry fails to specify any undue burden or harassment and fails to identify good cause for a Motion for Protection.**

> *1. Information sought is relevant and no undue burden exists*

Bayer's requests are relevant for the reasons discussed above in response to the Motion to Quash. Moreover, Fortenberry fails to show lack of relevance sufficient to warrant a protective order. *See Rocha v. Metro. Life Ins. Co.*, No. SA-05-CA-60-FB, 2005 WL 8156353, at *3 (W.D. Tex. Sept. 27, 2005) (denying motion for protective order noting that requests appeared relevant on their face and opposing party's conclusory statements were insufficient to make showing of lack of relevance).

Bayer seeks unique and specific information from Fortenberry, for which no available substitute exists. Only Fortenberry can respond to questions regarding his knowledge of the delinting, saving, replanting and/or sale of seed with Bayer's patented traits and admits as much when indicating that the records sought are only accessible by a small few directly affiliated with Mr. Fortenberry's farming operation. *See Gaedeke Holdings VII, Ltd. v. Mills*, No. 3:15-MC-36-D-BN, 2015 WL 3539658, at *4 (N.D. Tex. June 5, 2015) (denying motion to quash and protective order finding that defendants showed that the unique testimony sought from CEO could not be obtained by any less burdensome or intrusive means of deposing lesser-ranking or other employees). A byproduct of this information and testimony is that it may uncover Fortenberry's own infringement of Bayer's panted cotton technologies, but that is not a reason for him to avoid providing the requested information that is relevant and narrowly tailored to the case against Willis.

Fortenberry fails to specify any undue burden by complying with Plaintiffs' request. While Fortenberry alleges inconvenience, inconvenience alone is insufficient to show undue burden. *Stephens v. Big Spring Herald, Inc.*, No. 1:19-CV-123-H, 2020 WL 11577890, at *3

(N.D. Tex. Aug. 19, 2020) (rejecting the argument that given the CEO's responsibilities and schedule, it was unduly burdensome to provide a deposition of the nonparty).

### 2. *Fortenberry fails to make a showing of good cause for a protective order.*

Fortenberry similarly fails to demonstrate good cause or make the necessary showing of annoyance, embarrassment, oppression, undue burden, or expense to entitle him to the relief sought under a protective order. Fortenberry merely asserts conclusory allegations of undue burden and privilege. While Fortenberry generally asserts that the information sought is protected by confidentiality, he fails to specify any specific burden or even identify any burden that arises from complying with Bayer's subpoena other than it might take him greatly exaggerated amounts of time to gather the records. *See Bayview Loan Servicing, LLC v. Standard Guar. Ins*. Co., No. SA-07-CA-394-XR, 2008 WL 11333992, at *2 (W.D. Tex. June 30, 2008).

Fortenberry further fails to identify the specific documents protected by privilege or confidential information. General assertions of confidentiality are insufficient to establish good cause. *See Schmidt Tr. of Est. of Border Anesthesia Servs., P.C. v. McKee*, No. CV B-10-20, 2012 WL 13137023, at *4 (S.D. Tex. Feb. 21, 2012).

Because Fortenberry fails to specifically identify or describe how Bayer's requests are burdensome, he has not established good cause for the relief he seeks. Accordingly, Fortenberry's motion for protection should also be denied.[16]

---

[16] Because Fortenberry fails to meet his burden on a motion to quash and motion for protective order, his requested relief for attorneys' fees, compensation for lost time and expenses incurred, and filing fees should be summarily denied.

**C.      Fortenberry Should Be Ordered to Pay Bayer's Attorney's Fees In Prosecuting This Response.**

Pursuant to Federal Rules of Civil Procedure 26 and 37, Bayer is entitled to reimbursement for its time and costs, including reasonable attorneys' fees, associated with responding to Fortenberry's meritless and baseless motion.[17] Fortenberry moved to quash and for a protective order only to resist discovery. Fortenberry's motion lacks any basis in fact or law. Fortenberry knows he was Willis's biggest delinting customer in 2020, yet he cites only to 2019 and describes his relationship with Willis as amounting to "minor interactions." Fortenberry also knows he has large amounts of delinted seed at Willis's facility ready to plant.

Fortenberry also has made various omissions and misrepresentations to the Court in the Motions filed.  First, he indicates he's a "conventional" and "organic" grower. But he knows and Bayer demonstrates above that for multiple years Fortenberry has purchased seed containing its patented traits, something that's inconsistent with "conventional" and "organic" farming.  And it was not just a bag or two. In some years, Fortenberry purchased multiple hundreds of bags of Bayer traited cotton seed capable of planting thousands of acres. In addition, the seed he transferred to Willis and had Willis prepare for planting through the delinting process was full of Bayer patented traits, something he had to have known because of the active participation of the farmer required to bring the seed to that point in the process.

---

[17] Rule 26(a), "which governs motions for protective orders, makes Rule 37(a)(4) applicable regarding the award of expenses incurred in relation to such motions. When a court denies a motion for protective order, the Rule calls for an award of the opposing party's expenses unless the motion was substantially justified or unless sanctions would be otherwise unfair." *Booth v. City of Dallas*, 312 F.R.D. 427, 435 (N.D. Tex. 2015) (finding that the plaintiff's emergency motion to quash was not substantially justified because it did not have a reasonable basis in law and fact, therefore the court granted the city's request for attorney's fees); *Compass Bank v. Williams*, No. 5:12-CV-186, 2015 WL 13119386, at *1 (S.D. Tex. Mar. 2, 2015) (finding that the defendant's motion for protective order was not substantially justified because case law was clear that the information sought was relevant to the plaintiff's claims and granting plaintiff's request for attorneys' fees at a rate of $200 per hour); *Ogbonna v. Usplabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 12489696, at *7 (W.D. Tex. Sept. 10, 2014) (granting plaintiff's request for an award of attorneys' fees and costs incurred in opposing the defendants' motion protective order in the amount of $500 per hour).

Moreover, in Exhibit C to his Motion (Dkt. 34), Fortenberry presents an executed consent form as if it was presented to Bayer for it to collect records. But until this pleading, that document was never produced to Bayer or its counsel.

Also, Fortenberry denies signing the 2012 TSA. He conveniently makes this denial in his Motion, but not in the affidavit he signed to support his claims. And he has had a complete, fully legible color scan of both sides of his 2012 TSA since at least October 9, 2020. *See* Exhibit B.

Fortenberry's baseless Motion has caused Bayer to incur unnecessary costs, including attorneys' fees, in preparing this Response. Fortenberry should be ordered to pay Bayer's expenses incurred in responding to the Motion. *See Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) ("The sanctions provisions of Rules 26 and 37 authorize expenses against a party resisting discovery by unreasonably necessitating a motion to compel or by unreasonably moving for a protective order.").

## V. CONCLUSION

Bayer requests that the Court deny Fortenberry's motions to quash and for protective order, order Fortenberry to appear for a deposition, and grant Bayer's request for costs and attorneys' fees incurred in responding to these motions.

Plaintiffs do not believe an evidentiary hearing is necessary in this case. This Response, including its exhibits, establishes the relevance of the information requested in the subpoena and why Fortenberry should be ordered to produce and then appear for deposition to testify on that information. Should the Court determine, however, that it would benefit from oral argument given the technical nature of some of the information presented herein or otherwise, Plaintiffs will be prepared to participate.

Dated:  May 31, 2022

Respectfully submitted,

**THOMPSON COBURN LLP**

By *_/s/ Nicole L. Williams_*

Nicole L. Williams
Texas Bar No. 24041784
nwilliams@thompsoncoburn.com

2100 Ross Avenue, Suite 3200
Dallas, TX 75201
214-629-7113
972-629-7171 (facsimile)

Jeffrey Masson, MO Bar No. 60244
(*pro hac vice*)
jmasson@thompsoncoburn.com

Daniel Cox, MO Bar No. 38902
(*pro hac vice*)
dcox@thompsoncoburn.com

Matthew Bober, MO Bar No. 59825
(*pro hac vice*)
mbober@thompsoncoburn.com

One U.S. Bank Plaza
St. Louis, MO 63101
314-552-6030
314-552-7000 (facsimile)

*Attorneys for Plaintiffs Bayer
CropScience LP and Monsanto
Technology LLC*

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a true and correct copy of the foregoing has been served

on all counsel of record on this the 31st day of May, 2022 through the Court's

electronic filing system.

*/s/ Nicole L. Williams*_____
Nicole L. Williams